IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS A. SCOTT, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:19-cv-551 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| STEPHEN A. ZAPPALA, JR., | ) | |
| MICHAEL CLARK and | ) | |
| JOSH SHAPIRO, | ) | |
| Respondents. | ) | |

## MEMORANDUM

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF 3) filed by state prisoner Thomas A. Scott ("Petitioner") under 28 U.S.C. § 2254. For the reasons set forth below, the Court will deny the Petition because all of his claims are time-barred, and will deny a certificate of appealability as to each claim.

## I.  Relevant Background[2]

In May 2011, the Commonwealth charged Petitioner with two counts of Criminal Attempted Homicide, 18 Pa. Cons. Stat. § 901; two counts of Assault of Law Enforcement Officer, 18 Pa. Cons. Stat. § 2702.1 (Counts 3 and 4); two counts of Aggravated Assault, 18 Pa. Cons. Stat. § 2702; and two counts of Reckless Endangerment, 18 Pa. Cons. Stat. § 2705. These charges arose out of an incident that occurred in the early morning hours of March 9, 2011 between Petitioner and

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Respondents electronically filed as exhibits to their answer (ECF 20) relevant parts of the state court record. They have also submitted a hard copy of the Court of Common Pleas' file for Petitioner's criminal case, including the trial transcript.

Sergeant Jason Snyder and Detective Mark Goob, both of whom were assigned to the narcotics and vice section of the City of Pittsburgh Police Department.

Petitioner retained Attorney William Jones ("trial counsel") to represent him. His jury trial was held on August 24 through August 29, 2011.

In its Appellate Rule 1925(a) opinion issued after Petitioner filed a direct appeal, the trial court summarized the evidence introduced by the Commonwealth as follows:

> City of Pittsburgh Police Sergeant Jason Snyder, a narcotics detective, testified that on March 9, 2011, he was on patrol in a high crime area of Pittsburgh while in an unmarked police vehicle with Detective Jedidiah Pollock. Detectives Ed Fallert and Mark Goob were trailing him in a second unmarked vehicle. Sergeant Snyder heard multiple gunshots to his right. He turned and saw a male in dark clothing in an alley firing a handgun. Sergeant Snyder, who testified he was wearing his badge around his neck, exited his vehicle and loudly declared, "Pittsburgh Police, drop your weapon." (TT 50-53.) The assailant, identified by the Sergeant as [Petitioner], immediately turned and fired more than eight rounds at the Sergeant. Sergeant Snyder returned fire and hit [Petitioner], causing him to fall face forward. (TT 53, 55.)
>
> Detective Mark Goob also testified that he observed [Petitioner] shoot at Sergeant Snyder. (TT 150.) He heard the shots and saw the muzzle flash. (TT 150-151.) After [Petitioner] was hit, Detective Goob approached him to determine if [he] remained a threat and to render medical aid if possible. (TT 152.) During his cautious approach, Detective Goob repeatedly instructed [Petitioner] to drop the weapon which the Detective could see in [Petitioner's] hand. Instead, while Detective Goob was approximately five yards away, [Petitioner] turned, pointed his gun at Detective Goob and started to fire again. (TT 155.) Detective Goob heard the gun discharge and returned fire, hitting [Petitioner] in the leg. The Officer saw the slide of [Petitioner's] gun lock back, an indication that [Petitioner] was out of bullets. [Petitioner] then said words indicating that he quit or was done and dropped his gun. (TT 156-157.)
>
> Detective Edward Fallert testified similarly to having observed [Petitioner] turn and fire at Sergeant Snyder. (TT 349.) Once Sergeant Snyder shot [Petitioner] to the ground, Detective Fallert heard Detective Goob repeatedly shout to [Petitioner] to drop the gun. (TT 352.) Instead of complying with the Officer's demand, Detective Fallert observed [Petitioner] roll with gun in hand toward Detective Goob. After getting shot by Detective Goob, Detective Fallert saw [Petitioner] drop the gun and surrender, the gun in slide-lock, open chamber position. (TT 352.) Detective Fallert also noted an odor of alcohol emanating from [Petitioner]. (TT 354.)

Detective Jeffrey Palmer recovered the Glock pistol, .40 caliber belonging to [Petitioner] and testified that the gun was recovered with the slide in the locked position. (TT 418-419.)

Detective Scott Evans arrived after the shooting and recovered shell casings at the scene. Eight of the casings were brass in color, which would not have been consistent with police-issued ammunition. (TT 247.) Other casings recovered at the scene matched in caliber, make and color with standard issue police 'duty ammo.' *Ibid.* Detective Evans concluded that some casings were fired by police-issued weapons and others were not. Upon further research, Detective Evans discovered that the gun found at the scene was owned by [Petitioner] who did not have a license to carry a firearm on his person. (TT 270-271.)

(Resp's Ex. 4, ECF 20-1 at 30-31.)

Petitioner testified at the trial that he finished work between 10:00 and 11:00 p.m. on March 8, 2011. He then drove his co-worker, Will Harris, to the home of Harris' fiancé, located on Bennett Street in the Homewood neighborhood of Pittsburgh. Petitioner, Harris, his fiancé and another individual played a drinking game for approximately one and a half to two hours. (Trial Tr. at 517-19, 602.)

Petitioner left the house around 1:00 a.m. (*Id.* at 520, 606.) He testified that, when his vehicle would not start, he decided to walk to a nearby alley and test-fire the handgun he had recently purchased to see if it was working properly. (*Id.* at 607-10.) Petitioner stated that he walked across Bennett Street and that, when he reached Felicia Way from an alley, he fired his gun approximately four times in the direction of nearby dirt mounds. (*Id.* at 610-13.)

Petitioner further testified that he did not point his weapon and discharge it in the direction of Sergeant Snyder or anyone else. (*Id.* at 616.) He stated that after he fired his gun at the dirt mounds and was walking back to his vehicle, he felt his right leg give out and then he fell to the ground on his right side. (*Id.* at 614.) Petitioner stated that he did not understand why he had fallen and he tried to pick up his head to look around, and in so doing raised his right arm. (*Id.* at 615.)

Detective George Satler interviewed Petitioner on March 9, 2011 after he had been transported to the hospital following the incident. Detective Satler testified that Petitioner told him

that when he decided to test-fire his gun it was fully loaded with a clip that contained as least fifteen rounds. (*Id.* at 521-22.) Petitioner also told Detective Satler that he shot in the direction of the dirt mounds at least three times. (*Id.* at 522.) Detective Statler further testified that, although Petitioner did not give him a definitive answer, he acknowledged during the interview that it was possible that the police had identified themselves to him prior to shooting him and also that he may have fired his weapon after he had been shot and was on the ground. (*Id.* at 522-24.)

On August 29, 2011, the jury acquitted Petitioner of the two counts of Criminal Attempted Homicide but found him guilty on all other counts. That same date, the trial court sentenced Petitioner to a total aggregate sentence of 40 to 80 years of imprisonment as follows: Count 3 (Assault of Law Enforcement Officer—Sergeant Snyder) a term of 20 to 40 years; Count 4 (Assault of Law Enforcement Officer—Detective Goob) a term of 20 to 40 years, to run consecutive to Count 3; Count 5 (Aggravated Assault) at term of 5 to 10 years, to run concurrent with Count 3; Count 6 (Aggravated Assault), a term of 5 to 10 years, to run concurrent with Count 4. The trial court imposed no further penalty at Counts 7 or 8 (Reckless Endangerment).

At the conclusion of Petitioner's trial and sentencing on August 29, 2011, the trial court permitted trial counsel to withdraw as Petitioner's attorney. (Trial Tr. at 759.) The trial court issued an order appointing the Law Office of the Office of Allegheny Public Defender ("post-sentence/direct appeal counsel") to represent Petitioner on September 2, 2011,[3] although it did not file that order on its docket until September 7, 2011. (*See* Resp's Ex. 6, ECF 20-2 at 1-8, *Commonwealth v. Scott*, No. 1582 WDA 2011, slip op. at 7 (Pa. Super. Ct. June 18, 2013) ("*Scott I*")).

---

[3] Petitioner initially was represented by Attorney Jessica L. Herndon with the Public Defender's Office. Other attorneys with that office were assigned to Petitioner's case when it was on appeal before the Superior Court of Pennsylvania.

Petitioner did not file post-sentence motions, which were due by September 8, 2011, or a notice of appeal, which was due by September 28, 2011. Petitioner, through counsel, subsequently filed an unopposed collateral petition requesting that his direct appeal rights be reinstated *nunc pro tunc*. (Resp's Ex. 2, ECF at 18-21). In this petition, it was explained that counsel missed the deadline to file a direct appeal by one day due to a legal secretary's calendaring error, which incorrectly recorded the date by which the notice of direct appeal was due. (Resp's Ex. 2, ECF at 18-21.)

The trial court granted that petition and reinstated Petitioner's right to file a direct appeal *nunc pro tunc*. Petitioner, through counsel, then filed a direct appeal with the Superior Court of Pennsylvania, in which he raised the following two claims:

1.  "The evidence presented is insufficient to establish that [Petitioner] fired any shots in the direction of the police officers. The testimony provided only the location of the shell casings, there were no slugs recovered from any spot around the officers, there were no injury to the officers or any testimony that they saw or heard projectiles traveling in their direction. The evidence agrees only that [Petitioner] was firing his weapon, but, even from his own admission, [he] was firing into a dirt mound and not at the officers." (Resp's Ex. 2, ECF 20-1 at 56; *see also id.* at 62-70); and,

2.  The trial court effectively denied Petitioner's right to counsel for post-sentence motions because the order appointing the Office of the Public Defender was not docketed until September 7, 2011, at which point "nine out of ten days allowed to file post-sentence motions had lapsed[,]" and, therefore, counsel was "provided no time" to file post-sentence motions. (*Id.* at 58; *see also id.* at 57-60.)

On June 18, 2013, the Superior Court affirmed Petitioner's judgment of sentence in *Scott I*. (Resp's Ex. 2, ECF 20-2 at 1-8.) In denying Petitioner's sufficiency of the evidence claim, the Superior Court held:

[Petitioner] posits that all three of the crimes of which he was convicted required a finding that he fired his gun at the police officers, but that the Commonwealth presented insufficient evidence to establish that he did so. *See* Appellant's Brief at 24, 31, 33. This assertion is belied by the evidence of record, as Sergeant Snyder,

Detective Goob and Detective Fallert all testified that they saw [Petitioner] fire at Sergeant Snyder. N.T., 8/24/11, at 53, 100, 149; N.T., 8/25/11, at 349. Sergeant Snyder and Detective Goob also testified that they observed [Petitioner] fire at Detective Goob when he approached [Petitioner] as he lay on the ground. N.T., 8/24/11, at 57, 109, 155, 157. This testimony, when viewed in the light most favorable to the Commonwealth, is sufficient to establish that [Petitioner] fired his firearm at police officers.

Much of [Petitioner's] argument on this issue is that the jury should have accepted his testimony about the events of the night in question over the testimony of the Commonwealth's witnesses.[3] *See id.* at 26-30. This is an argument addressed to the weight, not the sufficiency of the evidence. *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009). As [Petitioner] has not challenged the weight of the evidence underlying his convictions, this argument is misplaced.

(Resp's Ex. 2, *Scott I*, ECF 20-2 at 4-5) (footnotes omitted.) In denying Petitioner's second

claim, the Superior Court held:

[O]ur review of the record reveals that the trial court did appoint counsel in time for the filing of post-sentence motions. [Petitioner] was sentenced on August 29, 2011, and so he had until September 8, 2011 to file post-sentence motions. *See* Pa.R.Crim.P. 720(A) (providing that post-sentence motions must be filed within 10 days of the imposition of sentence). At sentencing on August 29, 2011, the trial court ascertained that [Petitioner's] counsel would be withdrawing, and so it stated that it would appoint counsel for [him]. [Trial Tr.] at 759. The trial court issued an order appointing counsel for [Petitioner] four days later, on September 2, 2011. This order was docketed on September 7, 2011. Thus, while the trial court's procedure (specifically, the delay in entering the order appointing counsel) was less than ideal, it did appoint counsel prior to the expiration of the period in which to file post-sentence motions.

While we may agree with [Petitioner] that the trial court could have taken a "more prudent" course of action in the appointment of counsel, Appellant's Brief at 23, we note that [Petitioner's] appointed counsel could have employed a more prudent approach as well, by seeking an extension of time in which to file post-sentence motions. [Petitioner] offers no explanation as to why his appointed counsel did not, or could not, have sought such an extension. Moreover, as the trial court points out, [Petitioner] could have, but did not, seek the reinstatement of his right to file post-sentence motions in the [petition] that sought the reinstatement of his appellate rights. Following our disposition here, [Petitioner] will have the right to file [a petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA")]. *Commonwealth v. Barnett*, 25 A.3d 371, 373 n.7 (Pa. Super. 2011), ("Upon restoration of direct appeal rights *nunc pro tunc*, a subsequent PCRA petition will be considered a first petition for timeliness purposes."). Therefore, if [Petitioner] is entitled to the relief he seeks (the right to file post-sentence motions *nunc pro tunc*), it would come from the successful allegations of ineffective assistance of counsel in such a petition. We note that we express no opinion on the validity of such a PCRA claim.

6

(*Id.* at 6-8.)

The Pennsylvania Supreme Court denied a petition for allowance of appeal on November 19, 2013. (Resp's Ex. 7, ECF 20-2 at 9.) Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court. Accordingly, his judgment of sentence became final under both state and federal law on February 17, 2014, when the 90-day period for him to file a petition for a writ of certiorari expired. 42 Pa. Cons. Stat. § 9545(b)(3); 28 U.S.C. § 2244(d)(1)(A) and *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012).

On April 30, 2014, Petitioner filed a *pro se* PCRA petition[4] (Resp's Ex. 8, ECF 20-2 at 10-32) in which he raised the following three claims:

1. Trial counsel was ineffective for failing introduce Petitioner's medical records to show that he "was shot from behind" and, therefore, was not facing Sergeant Snyder when Sergeant Snyder shot him;

2. Trial counsel was ineffective for "not arguing that the [crime scene] photographs show[ed] that [Petitioner] fired nine times before officers got out of their cars and could not have fired [his gun] as many times as [the officers] said"; and

3. The Commonwealth knowingly introduced perjured testimony at trial because if, as the officers testified, Petitioner fired his weapon at Sergeant Snyder, then Petitioner would have had "at least 1 chest wound or at least 1 wound to the front of his person" when Sergeant Snyder returned fire and hit him and "there would have been more shell casings" around the area where Petitioner fell.

(*Id.* at 15-18.)

The trial court, now the PCRA court appointed Attorney Scott Coffey ("PCRA counsel") to represent Petitioner. PCRA counsel subsequently filed an application for leave to withdraw and an accompanying "no-merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988)

---

[4] Since this collateral petition was in effect Petitioner's first PCRA petition, the Court shall refer to this proceeding as the "first PCRA proceeding."

and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. 1988) (en banc). (Resp's Ex. 9, ECF 20-2 at 34-46.)[5]

On June 6, 2014, the PCRA court issued a notice in accordance with Pennsylvania Rule of Criminal Procedure 907 in which it advised Petitioner of its intent to grant PCRA counsel's request for leave to withdraw from representation and dismiss the PCRA petition. (Resp's Ex. 1, ECF 20-1 at 8; Resp's Ex. 10, ECF 20-2 at 48.) The PCRA court advised Petitioner that he had twenty days to file a response to this notice.[6] (*Id.*)

Petitioner did not file a timely response to the PCRA court's notice. On June 26, 2014, the PCRA court issued an order in which it dismissed the Petitioner's PCRA petition, granted PCRA counsel's request to withdraw, and advised Petitioner that he had the right to file an appeal to the Superior Court within thirty days. (Resp's Ex. 11, ECF 20-2 at p. 49.)

---

[5] Pennsylvania law provides that before appointed counsel can be permitted to withdraw from representing a petitioner under the PCRA, counsel is required to file and obtain approval of a "no-merit" letter pursuant to the mandates of *Turner/Finley*. "The no-merit letter must set forth: 1) the nature and extent of counsel's review of the case; 2) each issue that the petitioner wishes to raise on appeal; and 3) counsel's explanation of why each of those issues is meritless." *Commonwealth v. Kelsey*, 206 A.3d 1135, 1139 (Pa. Super. Ct. 2019) (citations omitted). Counsel must file the *Turner/Finley* letter and send copies of it and an application to withdraw to the petitioner with the advisement that the petitioner has the right to proceed *pro se* or with a privately retained attorney. *Id.*; *see also Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 90 (3d Cir. 2013). The court must then conduct its own independent evaluation of the record to determine if it agrees with counsel that the PCRA petition is without merit. *Commonwealth v. Rykard*, 55 A.3d 1177, 1184 (Pa. Super. Ct. 2012). If the court agrees with counsel that the petition is meritless, the petitioner may proceed *pro se* or with a privately retained attorney. *Id.*

[6] Pennsylvania law requires a petitioner to raise a claim of PCRA counsel's ineffectiveness in response to the PCRA court's Rule 907 notice of intent to dismiss or risk waiver. *Commonwealth v. Pitts*, 981 A.2d 875, 879-80 (Pa. 2009); *see also Commonwealth v. Betts*, 240 A.3d 616, 622 (Pa. Super. Ct. 2020); *Commonwealth v. Henkel*, 90 A.3d 16, 25 (Pa. Super. 2014) (*en banc*) ("[T]he *Pitts* majority mandated that a petitioner raise any allegations of PCRA counsel's ineffectiveness in response to the PCRA court's notice of dismissal."); *see also Brunner v. Clark*, No. 2:16-cv-766, 2019 WL 1506006, at *10-12 (W.D. Pa. Apr. 5, 2019) (same).

Petitioner filed a *pro se* appeal to the Superior Court. In his concise statement of matters complained of on appeal which he filed pursuant to Appellate Rule 1925(b), he raised the same three claims that he raised in his *pro se* PCRA petition. (Resp's Ex. 13, ECF 20-2 at 56-57). The PCRA court issued its Appellate Rule 1925(a) opinion setting forth why these claims lacked merit:

> [Petitioner] first alleges that [trial] counsel was ineffective because he failed to introduce medical records to support [the defense] theory of the case that he was shot in the back….
>
> [This claim] lacks merit. Evidence of the location of the shots from police which struck [Petitioner] was introduced through [Petitioner's] testimony, which the Commonwealth did not contest. (TT 627-628.) Therefore, the medical records would have been cumulative and unnecessary. Furthermore, at closing argument [trial counsel] emphasized the inconsistency between the police testimony regarding the wounds and the actual location of the wounds. (TT 694-695.)
>
> [Petitioner] next alleges that [trial counsel] was ineffective for failing to argue that crime scene photographs stood in contrast with the testimony of the Commonwealth's witnesses. [He] alleges that the crime scene photographs show that [he] did not fire his gun as many times as [the] Commonwealth's witnesses testified….
>
> … [T]he crime scene photos, which the Commonwealth admitted, supported the Commonwealth's theory of the case. The shell casings at the scene established that [Petitioner] fired his gun eleven times. According to [Petitioner], four of those rounds were aimed at a dirt mound. The exact number of rounds fired, as indicated by the photographs, is immaterial to the ultimate disposition in this case. The photographs support the jury's finding that [Petitioner] shot at the police officers. As [Petitioner] did not suffer prejudice, his claim is without merit.
>
> Lastly, [Petitioner] alleges that his due process rights were violated by numerous witnesses committing perjury. For a statement to be a perjured one, it must be willfully and corruptly false. *Commonwealth v. Hawkins*, 284 A.2d 730, 731 (Pa. 1971). Because his allegation lacks specificity, the Court is left in the uncomfortable position of having to speculate as to which witness [Petitioner] believes committed perjury and what portions of their testimony were untrue. Based on his PCRA petition, it appears [Petitioner] is most concerned with [Sergeant] Snyder's statement that [Petitioner] turned and fired at him [and then Sergeant Snyder] shot [Petitioner] in the chest. [Petitioner] was shot between his right hip and rib, and between his left hip and rip. At best, [Sergeant] Snyder's statement as to the location of [Petitioner's] wound is marginally inaccurate, which is hardly willfully and corruptly false. Furthermore, [Petitioner] did not suffer prejudice in that the location of the bullet wounds in no way precludes the jury's finding that he shot at police officers.

(Resp's Ex. 14, ECF 20-2 at 59-61.)

In the appellate brief Petitioner filed with the Superior Court (Resp's Ex. 15, ECF 20-3 at 1-92), he raised new grounds for relief that his did not raise in either his pro se PCRA petition or in his concise statement of matters complained of on appeal. He claimed that PCRA counsel "had a legal basis to amend [the] *pro se* petition to develop ineffective [assistance of trial counsel] claims, and PCRA counsel's failure to do so rendered [Petitioner] un-counseled and deprived [him] of effective assistance of counsel" and, therefore, "the PCRA court erred when granting PCRA counsel's motion to withdraw" and dismissing the PCRA petition. (*Id.* at 23-24; *see also id.* at 14-24.) Specifically, Petitioner claimed that PCRA counsel should have filed an amended PCRA petition and raise claims that trial counsel was ineffective for failing to: (1) "employ expert's investigation into the exculpatory and impeachment evidence presented by the Commonwealth" in order to bolster Petitioner's credibility (*id.* at 25) and (2) file a motion to suppress the statement Petitioner gave to Detective Satler (*id.* at 43). Petitioner also asserted that PCRA counsel should have raised the claim that post-sentence/direct appeal counsel was ineffective "in neglecting to preserve and raise . . . the issue that the sentence [the trial court] imposed was manifestly excessive and unreasonable" (*id.* at 49.)

On December 14, 2015, the Superior Court issued its decision affirming the dismissal of the PCRA petition. (Resp's Ex. 16, ECF 20-4 at 1-7, *Commonwealth v. Scott*, No. 1354 WDA 2014, slip op. (Pa. Super. Ct. Dec. 14, 2015) ("*Scott II*")). It held that Petitioner waived all claims raised in his appellate brief, explaining:

> All of [Petitioner's] claims on appeal are waived, as [Petitioner] did not include the claims in his PCRA petition or in his court-ordered Rule 1925(b) statement. *Commonwealth v. McGill*, 832 A.2d 1014, 1021-1022 (Pa. 2003) (a claim that PCRA counsel was ineffective is separate and distinct from a claim that trial counsel was ineffective); *Commonwealth v. Rigg*, 84 A.3d 1080, 1085 (Pa. Super. 2014) ("where the new issue is one concerning PCRA counsel's representation, a petitioner can preserve the issue by including that claim in his Rule 907 response or raising the issue while the PCRA court retains jurisdiction. Since [a]ppellant did

not seek leave to amend his petition or otherwise preserve his . . . PCRA counsel ineffectiveness claims, he waived the issues he raised for the first time in his [Rule] 1925(b) statement[ ]") (internal citations omitted); *Commonwealth v. Jacobs*, 727 A.2d 545, 547 (Pa.1999) ("issues [that] were not raised in [an] original PCRA petition, counsel's amended petition, or the oral amendments made to [a] petition before the PCRA court . . . . are waived"); Pa.R.A.P.1925(b)(4)(vii) ("[i]ssues not included in the [Rule 1925(b)] statement . . . are waived"); *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) ("[a]ny issues not raised in a Pa.R.A.P.1925(b) statement will be waived").

(*Id.* at 6) (altered text supplied by the Superior Court).

Petitioner did not file a petition for allowance of appeal with the Pennsylvania Supreme Court following the Superior Court's decision in *Scott II*. In February 2016, he filed another *pro se* PCRA petition ("second PCRA petition"), which he moved to voluntarily withdraw in April 2016. The PCRA court granted his request and dismissed that second PCRA petition on June 20, 2016. (Resp's Ex. 1, ECF 20-1 at 11.)

According to Petitioner, he retained Attorney Lea T. Bickerton to represent him in around May 2016. (ECF 30 at 7.) He has attached as exhibits to his Reply (ECF 30) letters that he contends they exchanged. Pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District, the Court shall expand the record to include the exhibits Petitioner attached to his Reply. The Court assumes for the purposes of this Memorandum only that the exhibits Petitioner attached to his Reply are authentic. *See Williams v. Woodford*, 384 F.3d 567, 590-91 (9th Cir. 2004) (expansion of the record is a permissible step that may avoid the necessity of an expensive and time consuming evidentiary hearing); *Boyko v. Parke*, 259 F.3d 781, 790 (7th Cir. 2001) (Rule 7 "can be used to introduce new factual information into the record in lieu of an evidentiary hearing").

Petitioner's exhibits show that in correspondence dated July 12, 2016, Attorney Bickerton sent him a "working draft" of a federal habeas petition. (Pet's Exs. 1 & 2, ECF 30-1 at 1-10.)

11

Petitioner responded to Attorney Bickerton in a letter dated July 17, 2016. (Pet's Ex. 3, ECF 30-3 at 2-3.) He answered questions she had asked of him and he commented on the draft petition. (*Id.*)

In a letter dated December 7, 2016, Petitioner asked Attorney Bickerton about the status of the habeas petition and stated that he "was told that the deadline to file it was in December but I was not told when in December. I would like to … read it before it's due if possible. I would also like to know when the petition is due." (Pet's Ex. 4, ECF No. 30-4 at 1-2.) Petitioner has not produced or described Attorney Bickerton's response to this letter.

Petitioner asserts that "[r]ather th[a]n filing a timely" federal habeas petition, Attorney Bickerton instead filed another collateral petition in state court. (ECF 30 at 33.) Indeed, on January 13, 2017, Petitioner filed, through counsel, another petition in state court. (Resp's Ex. 17, ECF 20-4 at 8-14.) In this state-court petition he asserted that PCRA counsel was ineffective for failing to raise the claim that the mandatory minimum sentence he is serving violates the rule of *Alleyne v. United States*, 570 U.S. 99 (2013). (*Id.* at 13-14.) In *Alleyne*, the Supreme Court held for the first time that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury and proven beyond a reasonable doubt. Petitioner also argued that the court should construe his filing as a "petition for a writ of habeas corpus or coram nobis" and not as another PCRA petition. (*Id.* at 10-14.)

Petitioner wrote a letter to Attorney Bickerton on January 17, 2017, three days after this state-court petition was filed. (Pet's Ex. 5, ECF 30-5 at 2-3.) This letter demonstrates that Petitioner was aware that counsel had filed the state-court petition and not a federal habeas petition. Petitioner asked Attorney Bickerton "what would be next if Judge Rangos [the state court judge who presided over his trial and PCRA proceedings] ruled in our favor on the illegal sentence[?]" (*Id.* at 3.) He also discussed issues that he believed could "still be raised in a federal habeas petition[.]" (*Id.*)

The Commonwealth filed a motion to dismiss Petitioner's state-court petition in which it argued that although Petitioner had entitled his pleading a "petition for a writ of habeas corpus or coram nobis," it was in actuality an untimely PCRA petition.[7] (Resp's Ex. 18, ECF 20-4 at 16-22.) The PCRA court issued a Rule 907 notice of intent to dismiss, to which Petitioner, through counsel, filed a response. (Resp's Ex. 1, ECF 20-1 at 12.)

On March 17, 2017, the PCRA court dismissed the "petition for a writ of habeas corpus or coram nobis. It agreed with the Commonwealth's argument that it was in fact a PCRA petition over which it lacked jurisdiction because it was filed outside the PCRA's one-year statute of limitations. (Resp's Ex. 19, ECF 20-4 at 23.)

Petitioner, through counsel, filed an appeal with the Superior Court. On January 21, 2018, when his case was on appeal, Petitioner wrote to Attorney Bickerton: "I am writing to inform you that as of 1/21/18 I still have not received any cop[ies] of motions, brief[s], or judge's opinion[s] that I requested." (Pet.'s Ex. 6, ECF 30-6 at 2.) He asked that she provide those documents to him. (*Id.*)

The following month, on February 27, 2018, the Superior Court issued its decision in Petitioner's appeal. (Resp's Ex. 23, ECF 20-4 at 60-67, *Commonwealth v. Scott*, No. 586 WDA 2017, slip op. (Pa. Super. Ct. Feb. 27, 2018) ("*Scott III*")). The Superior Court held that the PCRA court properly construed his "petition for a writ of habeas corpus or coram nobis" as an untimely PCRA petition over which it lacked jurisdiction. (*Id.* at 60, 66.) It also noted, however, that Petitioner's claim lacked merit because it had previously "determined that the mandatory minimum sentence provision at issue here does not implicate *Alleyne*." (Id. at 66 n.6.) It explained:

---

[7] The PCRA's one-year statute of limitations is jurisdictional and, therefore, a Pennsylvania court cannot ignore a petition's untimeliness and reach the merits of the claims stated therein. *See, e.g.*, *Commonwealth v. Mitchell*, 141 A.3d 1277, 1284 (Pa. 2016).

> Section 9719.1 does not require proof of any additional elements beyond those already required to convict a defendant of assault of a law enforcement officer in the first degree under 18 Pa.C.S. § 2702.1(a). Nor does section 9719.1 follow the statutory scheme that allowed a trial court to apply a mandatory minimum sentence if the Commonwealth established the triggering fact for the mandatory minimum by a preponderance of the evidence, which this Court found unconstitutional under *Alleyne*.... Instead, section 9719.1 simply describes the legislatively-required sentence for an offender convicted of assaulting a law enforcement officer pursuant to section 2702.1(a). Because it does not require proof of facts that increase a mandatory minimum sentence, and does not follow the statutory construction that allowed trial courts to find such facts by a preponderance of the evidence at sentencing, section 9719.1 is not unconstitutional under *Alleyne* or its Pennsylvania progeny.

(*Id.*, quoting *Commonwealth v. Reid*, 117 A.3d 777, 785-86 (Pa. Super. Ct. 2015)).

On March 29, 2018, Petitioner, through counsel, filed a petition for allowance of appeal with the Pennsylvania Supreme Court. (Resp's Ex. 20, ECF 20-4 at 26.) About a month and a half later, on May 13, 2018, Petitioner wrote to Attorney Bickerton that he had previously requested that she send him, but had not yet received, a copy of the brief she filed on his behalf and a judicial decision (presumably the Superior Court's decision in *Scott III*). (Pet's Ex. 7, ECF 30-7 at 2.) He also wrote that he understood that she was busy but that he was trusting her with is life and freedom and wanted "to know what's going on and try to read and understand the direction you [are] going in." (*Id.*)

On August 13, 2018, the Pennsylvania Supreme Court issued an order in which it denied the petition for allowance of appeal. (Pet's Ex. 8, ECF 30-8 at 3.) Attorney Bickerton mailed that order to Petitioner on August 29, 2018. (*Id.* at 2-3.) In her accompanying letter, she wrote: "We have until November 12, 2018 to file for review before the United States Supreme Court. If you do not file for review from the US Supreme Court, we will have to file a federal habeas corpus petition as soon as possible." (*Id.* at 2.)

Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court. Nor did he file at this time a federal habeas petition, either through counsel or *pro se*.

Petitioner asserts that Attorney Bickerton "abandoned" him after she sent him the August 29, 2018 letter and that every attempt by him and his family to contact her after that point "went unanswered." (ECF 30 at 9; *id.* at 34.) In support of this assertion, he cites a letter dated September 22, 2018 that he sent to Attorney Bickerton which contained a copy of a brief to assist in the preparation of a federal habeas petition. (Pet's Ex. 9, ECF 30-9 at 2.) He wrote: "I would like to raise these issues along with any issues you want to raise. With your skill you can condense it to fit what you'[re] trying to do. I would like to ask for an evidentiary hearing." (*Id.*) Petitioner also cites a letter he wrote Attorney Bickerton on December 28, 2018, in which he "ask[ed] for an update on the [h]abeas petition[.]" (Pet's Ex. 10, ECF 30-10 at 2.) He also provided her with "two cases I have found that will help with the petition" and stated, "I look forward to hearing from you." (*Id.*)

Petitioner filed his *pro se* Petition for a Writ of Habeas Corpus (ECF 3) with this Court on May 7, 2019, which is the date he certified he placed it in the prison mailing system. (*Id.* at 15). He raises the following nine claims in the Petition:

Post-sentence/direct appeal counsel was ineffective for failing to:

- request that his right to file a post-sentence motion be reinstated (Claim 1) (ECF 3 at 5);

- litigate the claim that the prosecution committed "misconduct" for introducing alleged "perjured testimony" (Claim 5) (*id.* at 16) and his alleged "involuntary statement" (Claim 7) (*id.* at 17).

Trial counsel was ineffective for failing to:

- present medical records at trial (Claim 2) (*id.* at 7);

- file a motion to suppress the statement he gave to Detective Satler (Claim 3) (*id.* at 8);

- object to the "known perjured testimony" given by "multiple witnesses of the Commonwealth" (Claim 4) (*id.* at 10);

- argue that the crime scene photographs presented at trial discredited the testimony given by the Commonwealth's witnesses (Claim 6) (*id.* at 16);

PCRA counsel was ineffective for failing to:

- raise the claim that the cumulative effect of trial counsel's errors entitled Petitioner to PCRA relief (Claim 8) (*id.* at 18);

- raise the claim that his sentence violated the rule of *Alleyne* (Claim 9) (*id.* at 18-19).[8]

In their Answer (ECF 20), Respondents assert that the Court must dismiss the Petition because all of Petitioner's claims are time-barred under the applicable one-year statute of limitations, which is set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and codified at 28 U.S.C. § 2244(d).[9] Petitioner concedes in his Reply (ECF 30) that he filed his habeas claims outside the AEDPA's one-year statute of limitations. He argues that he is entitled to equitable tolling and also that, in accordance with the Supreme Court's decision in

---

[8] The Court notes that because Petitioner did not have a federal constitutional right to counsel during his PCRA proceeding, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), he cannot receive habeas relief on a claim that his PCRA counsel was ineffective, a fact codified by statute at 28 U.S.C. § 2254(i), which expressly provides: "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254." *See also Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") Thus, Claims 8 and 9 are not cognizable and are denied for that reason. However, if the Court construes Petitioner's claims of PCRA counsel's ineffectiveness as in fact raising the underlying claim (that is, as raising stand-alone claims that his sentence violated the rule in *Alleyne* claim and that the cumulative effect of trial counsel's alleged errors prejudiced him) these claims are still subject to denial because they are, like Petitioner's other claims, time-barred.

[9] Respondents also asserts that Petitioner procedurally defaulted his claims and that they have no merit. The Court's disposition on timeliness makes it unnecessary for it to reach these additional issues.

*McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Court must excuse his failure to comply with AEDPA's limitations period because he is "actually innocent."[10]

## II.    Discussion

### A.   Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state-court judgment. It permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Petitioner's burden to prove that he is entitled to the writ. *See, e.g., Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

In 1996, Congress made significant amendments to the federal habeas statutes with the enactment of AEDPA, which "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000)). AEDPA reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations and citation omitted).

---

[10] The magistrate judge to whom this case was initially assigned issued a report and recommendation (ECF 4) recommending that the Petition be dismissed prior to service because it was facially untimely. Petitioner filed objections asserting that he could overcome the time-bar. Therefore, the district court judge to whom the case was assigned at that time declined to adopt the report and recommendation and directed that the Petition be served upon the Respondents. The parties subsequently voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case.

AEDPA substantially revised the law governing federal habeas corpus. Among other things, AEDPA set a one-year limitations period for filing a federal habeas petition. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).

B. Petitioner's Claims are Time-barred

AEDPA's statute of limitations is codified at 28 U.S.C. § 2244(d) and it requires, with a few exceptions not applicable here, that habeas corpus claims under 28 U.S.C. § 2254 be filed within one year of the date the petitioner's judgment of sentence became final. 28 U.S.C. § 2244(d)(1)(A).[11] AEDPA also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d).

As set forth above, Petitioner's judgment of sentence became final on February 17, 2014. He filed the first PCRA petition 72 days later, on April 30, 2014. In accordance with § 2244(d)(2), that first PCRA proceeding *statutorily* tolled AEDPA's limitations period beginning on April 30, 2014.[12] Petitioner's first PCRA proceeding remained pending through on or around January 12, 2016, which is the date the 30-day time period expired for him to file a petition for

---

[11] The date upon which AEDPA's one-year limitations period commenced is determined on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113, 118-22 (3d Cir. 2004). In this case, the statute of limitations for each of Petitioner's claims began to run on the date his judgment of sentence became final in accordance with § 2244(d)(1)(A). The remaining provisions § 2244(d)(1) do not apply to Petitioner's case. 28 U.S.C. § 2244(d)(1)(B)-(D).

[12] Petitioner does not argue, and there is no basis for this Court to conclude, that the second PCRA petition he filed *pro se* in February 2016 statutorily tolled the limitation's period under § 2244(d)(2). As for the third PCRA petition he filed, through counsel, on January 13, 2017, it was filed after AEDPA's statute of limitations expired, so it could not serve to statutorily toll the limitations period. Moreover, because it was deemed to be untimely under state law, it could not statutorily toll AEDPA's statute of limitations. *Pace*, 544 U.S. at 417 (a state postconviction petition that is "rejected . . . as untimely . . . was not 'properly filed' . . . and . . . [does] not entitle[] a federal habeas corpus petitioner] to statutory tolling under § 2244(d)(2).").

allowance of appeal from the Superior Court's December 14, 2015 decision in *Scott II*. *Swartz*, 204 F.3d at 419-20.

AEDPA's limitations period began to run again the next day, on January 13, 2016. Since 72 days had expired already from the limitations period, Petitioner had 293 more days—until on or around November 1, 2016—to file a timely federal habeas petition. He did not file his Petition with this Court until May 7, 2019, thereby making the claims he raised in the Petition untimely by approximately 916 days.[13]

Petitioner acknowledges that he filed his claims outside of AEDPA's one-year statute of limitations, but contends that the limitations period should be equitably tolled. Equitable tolling would apply here only if Petitioner established that (1) he pursued his rights diligently;[14] and (2) some *extraordinary circumstance* stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631 (2010); *see, e.g.*, *Wallace v. Mahanoy*, 2 F.4d 133, 143-44 (3d Cir. 2021);

---

[13] Respondents and Petitioner both state that Petitioner had until October 3, 2016 to file a timely petition for a writ of habeas corpus. It appears to the Court that they did not account for the fact that the first PCRA proceeding remained pending during the thirty-day period Petitioner had to file a petition for allowance of appeal following the Superior Court's issuance of *Scott II*.

[14] The Court of Appeals has explained:

> The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence. *Holland*, 130 S. Ct. at 2565…. A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case. *See Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004) ("Due diligence does not require the maximum feasible diligence, but it does require diligence in the circumstances.") (emphasis added) (internal quotation marks and citation omitted); *see also Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011) ("To determine if a petitioner has been diligent in pursuing his petition, courts consider the petitioner's overall level of care and caution in light of his or her particular circumstances." (emphasis added)).

*Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013).

*Ross*, 712 F.3d at 798-804; *United States v. Thomas*, 713 F.3d 165, 174-75 (3d Cir. 2013);

*Munchinski v. Wilson*, 694 F.3d 308, 329-32 (3d Cir. 2012). "This conjunctive standard requires

showing *both* elements before we will permit tolling." *Sistrunk v. Rozum*, 674 F.3d 181, 190 (3d

Cir. 2012) (emphasis in original)). The Court of Appeals has further instructed that:

> "[t]here are no bright lines in determining whether equitable tolling is warranted in
> a given case." *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011). Nevertheless,
> "courts must be sparing in their use of equitable tolling," *Seitzinger v. Reading
> Hosp. & Medical Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999), and should do so "only
> when the principles of equity would make the right application of a limitation
> period unfair." *Miller [v. New Jersey State Dept. of Corr.]*, 145 F.3d [616, 618 (3d
> Cir. 1998)].

*Id.*

Petitioner has failed to establish that extraordinary circumstances prevented him from filing

a timely federal petition for a writ of habeas corpus, at least for the amount of time that would be

required to save his claims from being time-barred. Attorney Bickerton may have given him

incorrect information as to when AEDPA's statute of limitations expired or whether he should first

file the third PCRA petition and then a federal habeas petition. However, such errors do not qualify

as an extraordinary circumstance sufficient to warrant equitable tolling. *Holland*, 560 U.S. at 651-

62 ("a garden variety claim of excusable neglect, such as a simple 'miscalculation' that leads a

lawyer to miss a filing deadline, does not warrant equitable tolling.") (citations and internal

quotations omitted); *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) ("Attorney miscalculation

is simply not sufficient to warrant equitable tolling, particularly in the postconviction context

where prisoners have no constitutional right to counsel."); *Johnson v. Hendricks*, 314 F.3d 159,

162-63 (3d Cir. 2002) (rejecting the petitioner's argument that he established "extraordinary

circumstances" because he relied upon his attorney's erroneous advice regarding the expiration of

the AEDPA's statute of limitations.) *See also Maples v. Thomas*, 565 U.S. 266, 281, 283 (2012)

("[W]e reasoned in *Coleman*, [501 U.S. at 753-54], because the attorney is the prisoner's agent,

and under 'well-settled' principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent. Thus, when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish case. We do not disturb that general rule. A markedly different situation is presented, however, when an attorney abandons his client without notice, and thereby occasions the default. Having severed the principal-agent relationship, an attorney no longer acts, or fails to act, as the client's representative. His acts or omissions therefore 'cannot fairly be attribute to [the client].' *Coleman*, 501 U.S. at 753.") (additional citations omitted).

In *Holland*, the Supreme Court recognized the possibility that more egregious conduct on the part of counsel may constitute an extraordinary circumstance. It remanded for a lower court to make an extraordinary-circumstances determination where the attorney "failed to file [the] federal petition on time despite [the petitioner's] many letters that repeatedly emphasized the importance of his doing so," "apparently did not do the research necessary to find out the proper filing date," "*failed to inform [the client] in a timely manner about the crucial fact that the Florida Supreme Court had decided his case,*" and "*failed to communicate with his client over a period of years,* despite various pleas from [the client] that [the attorney] respond to his letters." 560 U.S. at 652 (emphasis added). The Supreme Court observed in *Holland* that the petitioner's "case may well be an 'extraordinary' instance in which petitioner's attorney's conduct constituted far more than 'garden variety' or 'excusable neglect.'" *Id.*

In contrast, in this case the letters between Petitioner and Attorney Bickerton demonstrate that he was aware of the course of action she took on his behalf and that they were in communication from the time he retained her in 2016 through August 29,  2018, when she sent the letter informing him that the Pennsylvania Supreme Court denied his petition for allowance of

appeal following the Superior Court's decision in *Scott III*. Petitioner does not allege that Attorney Bickerton deceived him in any manner. For example, he does not assert that she told him that she filed a federal habeas petition on his behalf when in fact she had not.

Petitioner does assert that Attorney Bickerton abandoned him after she sent the August 29, 2018 letter. If that is true, he does not explain why he waited until May 7, 2019 to file his *pro se* federal habeas petition. Petitioner may not have understood the ramifications of waiting so long file his federal habeas petition—particularly after Attorney Bickerton allegedly stopped communicating with him after she sent him the August 29, 2018 letter—but it is well established that a petitioner's "lack of legal knowledge or legal training does not alone justify equitable tolling." *Ross*, 712 F.3d at 799-800 (citing *Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003) (equitable tolling not justified where petitioner had one month left in limitations period in which he could have filed "at least a basic pro se habeas petition" at the time that petitioner's attorney informed him that he would not file an appeal in state court on his behalf and could no longer adequately represent him); and *Doe v. Menefee*, 391 F.3d 147, 177 (2d Cir. 2004) ("Given that we expect pro se petitioners to know when the limitations period expires . . . such inadvertence on *Doe*'s part cannot constitute reasonable diligence.")

Petitioner also argues that in accordance with the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Court must excuse his failure to comply with AEDPA's limitations period because he is innocent. In *McQuiggin*, the Supreme Court recognized that the actual-innocence "gateway" to federal habeas review developed in *Schlup v. Delo*, 513 U.S. 298 (1995) for procedurally defaulted claims extends to cases where a petitioner's claims would otherwise be barred by the expiration AEDPA's one-year statute of limitations.

In *Schlup*, the Supreme Court held that a viable claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." 513 U.S. at 324. Importantly, "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

The Supreme Court's ruling in *McQuiggin* was "grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." 569 U.S. at 392-93 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). It held that the "actual innocence" exception will apply only to a "severely confined category" of cases,*" id.* at 395, and instructed "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316).

In *Reeves v. Fayette SCI*, 897 F.3d 154, 160-61 (3d Cir. 2018), the Court of Appeals explained:

> To satisfy this standard, first, "a petitioner must present new, reliable evidence" and second, "show by a preponderance of the evidence 'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence,'" *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (citing and quoting *Schlup*, 513 U.S. at 324, 327, 115 S. Ct. 851), or stated differently, that it is "more likely than not any reasonable juror would have reasonable doubt," *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L.Ed.2d 1 (2006).

It further explained:

> "[M]ere impeachment evidence is generally not sufficient to satisfy the [actual innocence gateway] standard." *Munchinski v. Wilson*, 694 F.3d 308, 338 (3d Cir. 2012). However, new, reliable evidence that "undermine[s] the [trial] evidence pointing to the identity of the [perpetrator] and the motive for the [crime]" can suffice to show actual innocence. *Goldblum v. Klem*, 510 F.3d 204, 233 (3d Cir.

2007); *see also Munchinski*, 694 F.3d at 336-37 (explaining that actual innocence was demonstrated where new evidence both showed that the crime could not have happened in the way the Commonwealth presented at trial and provided an alternative theory that was more appropriate and better fit the facts of the case). In weighing the evidence, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors"; the actual innocence standard "does not require absolute certainty about the petitioner's guilt or innocence." *House*, 547 U.S. at 538, 126 S. Ct. 2064.

  The gateway actual innocence standard is "demanding" and satisfied only in the "rare" and "extraordinary" case where "a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin*, 569 U.S. at 386, 392, 401, 133 S. Ct. 1924 (internal quotation marks and citations omitted).

*Id.* at 161 (altered text added by court of appeals).

Petitioner has not produced new evidence of his innocence that provides a "gateway" through which the Court may consider his untimely federal habeas claims. He has attached to his Reply, as Exhibits 11 through 14, a printout of a map of the location of the shooting (Pet's Ex. 11, ECF 30-11) and three photographs taken of the crime scene that indicate where shell casings were located. (Pet's Ex. 12, ECF 30-12; Pet's Ex. 13, ECF 30-13; and Pet's Ex. 14, ECF 30-14. *See also* ECF 30 at 18, 23-25.) He cites to these exhibits and portions of the trial transcript to support his contention that he "fired [his] weapon from at a telephone pole across from the dirt mound.") It appears that these exhibits were introduced at his trial. Therefore, they do not satisfy the threshold requirement for applying the actual innocence standard, which requires the presentation of "new evidence" that was not presented at trial. *Schlup*, 513 U.S. at 324; *See also Hubbard v. Pinchak*, 378 F.3d 333, 340-41 (3d Cir. 2004) (evidence which is a mere "repackaging of the record as presented at trial" is not considered "new" evidence which may properly support a claim of actual innocence).

Moreover, to the extent that Petitioner's Exhibits 11 through 14 were not introduced at trial, they at most amount to evidence that the defense could have used to attempt to impeach the

testimony of the Commonwealth's witnesses and bolster the credibility of Petitioner's testimony that he did not shoot at Sergeant Snyder or Detective Goob and only shot at a dirt mound. The evidence does not qualify as the type of evidence of actual innocence sufficient to allow review of his time-barred claims.

Based upon the forgoing, Petitioner has shown neither that an "extraordinary circumstance" stood in his way of filing his habeas claims within AEDPA's statute of limitations or that he acted with the required diligence sufficient to justify the amount of equitable tolling that would be required to save his claims from being time-barred. Nor has Petitioner demonstrated that this is one of the rare cases where the actual innocence exception to the statute of limitations recognized by *McQuiggin* applies. Therefore, his habeas claims are time-barred and the Court will deny them for that reason.

## III.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Petitioner's claims should be denied as untimely. Accordingly, a certificate of appealability is denied with respect to each claim.

**IV.**    **Conclusion**

Based upon the foregoing, the Court will deny each of Petitioner's habeas claims and will

deny a certificate of appealability with respect to each claim.

An appropriate Order follows.


                                                                     /s/ Patricia L. Dodge
Date:  October 19, 2021                                              PATRICIA L. DODGE
                                                                     United States Magistrate Judge